

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED
JUN 0 7 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )  Case No.
One Apple iPhone Cellular Phone  )  **19MJ2390**
Serial #F2LW36G5JCM3, IMEI 35 940208 952345 5  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952/960 | Importation of Methamphetamine |

The application is based on these facts:
See attached affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Tanzi, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/7/19 1635

*Judge's signature*

City and state: San Diego, CA                Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jason Tanzi, Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following cellular phone, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as more particularly described in Attachment B:

   a. One Apple iPhone Cellular Phone
      Serial #F2LW36G5JCM3, IMEI 35 940208 952345 5
      (**Target Device**)

This search supports an investigation and prosecution of Julio Alexander LOPEZ-Acosta ("LOPEZ") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. Customs and Border Protection Officers ("CBPO") seized the **Target Device**, from LOPEZ at the time of his arrest for importation of methamphetamine into the U.S. from Mexico on December 13, 2018. Upon arriving at the Port of Entry, CBP Officers took custody of the **Target Device.** The **Target Device** is currently in the possession of DHS.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not

1

contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I have been employed as an HSI Special Agent since June 2016. In preparation for my duties as a Special Agent, I completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and the HSI Special Agent Training Program.

6. I am currently assigned to the Deputy Special Agent in Charge San Ysidro, California, Border Enforcement Security Task Force (BEST), Gangs and Weapons Group, and was previously assigned to Contraband Smuggling Group 1 for 27 months. As a Special Agent assigned I I have conducted criminal investigations for violations of federal and state laws for narcotics smuggling. Prior to becoming a Special Agent with Homeland Security Investigations, I worked as a Federal Air Marshal for approximately 14 years. In addition to participating in operational missions as a Federal Air Marshal, I served as a first-line supervisor and second-line manager to include assignments as an Assistant Supervisory Air Marshal in Charge (ASAC) in the Office of the Director and the Mission Operations Center. Previous employment also includes approximately two years as a Border Patrol Agent and four years as a Law Enforcement Officer in the United States Air Force Security Police. I have an Associate of Applied Science degree in Criminal Justice from the Community College of the Air Force, as well as a Bachelor of Science degree in Criminal Justice Administration and Master of Business Administration degree from the University of Phoenix.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Those involved in conspiracies

to smuggle and traffic narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs and videos, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, videos, audio files, call logs, address book entries, IP addresses, social network data, and location data.

 10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones, yields evidence:

  a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or

4

        possession and/or transportation with the intent to distribute controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.    Based on reports provided to your affiant by CBP Officers, on December 13, 2018, at approximately 3:47 p.m., LOPEZ, a Mexican citizen, applied for permission to enter into the United States from Mexico through the San Ysidro, California, Port of Entry ("POE") vehicle primary lane number 17, in the Southern District of California. LOPEZ was the driver and sole occupant of a blue Nissan Sentra bearing Baja California, Mexico license plates ("the vehicle").

12.    CBPO Varela was assigned to vehicle primary lane number 17 at the San Ysidro POE. CBPO Varela received a computer-generated alert based on an ITU lookout for the vehicle and referred LOPEZ to secondary for further inspection.

13. CBPO Josh Santos was operating the Z Portal (x-ray machine) at the San Ysidro POE. A Nissan Sentra bearing Mexico license plate A52NMT8 was x-rayed and anomalies were discovered in the vehicle's trunk area.

14. CBPO Canine Enforcement Officer (CEO) Steven Jansen along with Narcotics / Human Detector dog (NHDD) "Clint" screened a blue Nissan Sentra. During the inspection "Clint" alerted to a trained odor emanating from plastic bins containing Xbox consoles in the vehicle's trunk.

15. CBPO Gabriel Gatica was assigned to conduct a more thorough inspection of the blue Nissan Sentra. During the search, CBPO Gatica removed eight (8) Xbox consoles from the trunk of LOPEZ's vehicle. The Xbox consoles were disassembled, and it was discovered the inner workings of each unit had been previously removed. Inside each console was a package that fit the size and shape of the outer shell. Subsequently, eight (8) packages containing approximately 18.74 kilograms (41.31 pounds) of a substance which field-tested positive for the properties of methamphetamine were discovered hidden inside the game consoles in the trunk of LOPEZ's vehicle.

16. On December 14, 2018, Barbara L. Major, United States Magistrate Judge, signed a criminal complaint charging LOPEZ with the importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960. LOPEZ was further charged by Information on January 10, 2019, with importation of methamphetamine. LOPEZ entered a plea of not guilty.

17. Based on my training and experience, I know that data contained on a cellular phone will remain on the phone indefinitely so long as the phone is not connected to any cellular network. The **Target Device** has remained in the custody and control of Homeland Security Investigations, has not been powered on, and has not connected to any cellular network, since its seizure.

18. Based on my training and experience along with other law enforcement officers' training and experience, I know that narcotics trafficking activities entail

intricate planning to successfully evade detection by law enforcement. In my professional experience and in the professional experience of other agents with whom I have spoken, this requires planning and coordination in the weeks and often months prior to the event. For example, drug trafficking organizations (DTOs) recruit, evaluate, and supply load drivers with vehicles and phones, and drug smugglers are often asked to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Therefore, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on June 13, 2018, up to and including December 13, 2018.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Aside from the search warrant referred to above in paragraph 17, the United States has not attempted to obtain this information by other means.

## CONCLUSION

23. Based on all of the facts and circumstances described above, there is probable cause to conclude that LOPEZ used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952 and 960.

24. Because the **Target Device** was promptly seized during the investigation of LOPEZ's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by LOPEZ continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from June 13, 2018, to and including December 13, 2018.

8

25. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Jason Tanzi
Special Agent

Subscribed to and sworn in my presence this __7__ day of June, 2019.

_____
Hon. WILLIAM V. GALLO
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    One Apple iPhone Cellular Phone
    Serial #F2LW36G5JCM3, IMEI 35 940208 952345 5
    **(Target Device)**

**Target Device is** currently in the possession of The Department of Homeland Security, 2051 North Waterman Avenue Suite 100, El Centro, CA 92243, in the Southern District of California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the device described in Attachment A includes the search of deleted data, remnant data, slack space, and temporary or permanent files contained on or in the device. The seizure and search of the device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the device will be communications, records, or data, including but not limited to emails, text messages, photographs, audio files, videos, or location data, for the period of June 13, 2018, to and including December 13, 2018:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the subject device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 21 U.S.C. §§ 952 and 960.**